# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

JOSE GARCIA, LEDVIN ALARCON,
and all others similarly situated under
29 U.S.C. §216(b),

    Plaintiffs,

vs.

J & J, INC. d/b/a EAGLE PAINTING, a Florida corporation,
JANET S. FIELD, individually,
and JOHN H. FIELD, individually,

    Defendants.
_____/

## COMPLAINT

Plaintiffs Jose Garcia ("Garcia") and Ledvin Alarcon ("Alarcon") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated under 29 U.S.C. §216(b), hereby sue J & J, Inc. d/b/a Eagle Painting ("Eagle Painting"), Janet S. Field ("Janet") and John H. Field ("John") (collectively "Defendants"), and allege as follows:

### Introduction

1. This is an action by Plaintiffs against their former employers for unpaid wages and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

2. Plaintiffs seek damages within this court's jurisdictional requirements, reasonable attorneys' fee and costs, and all other remedies allowable by law.

3. The FLSA counts are brought as a collective action pursuant to 29 U.S.C. §216(b).

4. Upon information and belief, Defendants have failed to compensate similarly situated employees in accordance with the FLSA by depriving them of the FLSA's required overtime premium and minimum wage payments.

## Parties, Jurisdiction and Venue

5. Plaintiff Garcia resides in Miami-Dade County, Florida.

6. Plaintiff Alarcon resides in Miami-Dade County, Florida.

7. Eagle Painting is a Florida corporation with its principal place of business in Broward County, Florida.

8. Janet is over the age of eighteen, a resident of Broward County, and is otherwise *sui juris*.

9. At all times material, Janet was and is an owner and operator of Eagle Painting.

10. John is over the age of eighteen, a resident of Broward County, and is otherwise *sui juris*.

11. At all times material, John was and is an owner and operator of Eagle Painting.

12. During the relevant period, Plaintiffs performed work for Defendants in Broward County, Florida.

13. Venue is proper in this Court because Defendants transact business in this District, Defendants maintain a principal place of business in this District, Defendants employed Plaintiffs in this District, and the claims arose within this Circuit.

A. **Defendants' Business And Interstate Commerce**

14. Defendants operate a residential and commercial painting company and did so during the relevant period.

2 | P a g e   PERERA BARNHART, P.A.
12555 ORANGE DRIVE · SECOND FLOOR · DAVIE, FLORIDA 33330 · PHONE (786) 485.5232

15. Eagle Painting's annual volume of sales or business exceeded $500,000 annually for every relevant year.

16. At all relevant times, Defendants employed two or more employees, including Plaintiffs, that customarily, continually, and regularly handled goods and materials that i) were purchased from a person or entity outside the state of Florida and/or ii) were purchased in Florida but had previously traveled through interstate commerce.

17. Upon information and belief, Defendants obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, used electronic means to market and run their business in a way that was not limited to Florida, and otherwise regularly engaged in interstate commerce during the relevant period.

18. Defendants, upon information and belief, accept credit card payments, wire transfers, and other forms of payments that are made or processed outside the state of Florida.

19. Defendants are employers engaged in interstate commerce and subject to the FLSA.

B. **Defendants' Control Over Plaintiffs And Misclassification Of Plaintiffs As Independent Contractors**.

20. Garcia began working for Defendants in approximately 2012.

21. Garcia ceased working for Defendants in or around November 2018.

22. Garcia worked as a Painter during his entire tenure at Eagle Painting.

23. Alarcon began working for Defendants in approximately 2005.

24. Alarcon ceased working for Defendants in or around November 2018.

25. Alarcon worked as a Painter during his entire tenure at Eagle Painting

26. During the relevant period, Plaintiffs were controlled by all Defendants.

27. During the relevant period, Defendants set Plaintiffs' schedules.

28. During the relevant period, Plaintiffs reported to all Defendants.

29. Defendants provided the tools, materials, and supplies used by Plaintiffs to perform their work for Defendants during the relevant period.

30. Plaintiffs were issued uniforms by Defendants.

31. From 2012 to 2016, Defendants intentionally misclassified Garcia as an independent contractor.

32. In 2017, Defendants converted Garcia's classification to an employee along with four (4) other employees (the "Selected Employees") so that Janet and John Field (the "Individual Defendants") could reap monetary savings for themselves on their health insurance.

33. The Individual Defendants are older than the Selected Employees.

34. As a result, the Individual Defendants were facing relatively high health insurance rates if they secured health insurance only for themselves.

35. By including the Selected Employees as part of the insurance pool, the Individual Defendants artificially reduced their own health insurance premiums.

36. And, by allowing only the Selected Employees to participate in the health insurance plan, the Individual Defendants ensured that the increased cost of classifying workers as employees were not outweighed by the benefits of lower health insurance rates.

37. From 2005 to 2016, Defendants intentionally misclassified Alarcon as an independent contractor.

38. Starting in 2017, Defendants began paying Alarcon in cash.

C. **Defendants' Failure To Pay Plaintiffs In Accordance With The FLSA**

39. In 2017 and 2018, Garcia's hourly rate of pay was approximately $17.00 per hour.

40. In 2016, Garcia's hourly rate of pay was approximately $15.00 per hour.

41. During the relevant period, Alarcon was generally paid at an hourly rate of $18.00 an hour.

42. During the relevant period, the Defendants engaged in three practices that were in direct violation of the FLSA.

- **The Direct Overtime Violation Practice**

43. The first was an absolute failure to pay Painters time-and-a-half their regular rate of pay for all time worked over 40 in a workweek (the "Direct Overtime Violation Practice").

44. Garcia customarily and regularly worked over forty (40) hours a week for Defendants.

45. Defendants, however, never paid Garcia an overtime premium for all overtime hours worked as required by the FLSA.

46. Alarcon customarily and regularly worked over forty (40) hours a week for Defendants.

47. Defendants, however, never paid Alarcon an overtime premium for all overtime hours worked as required by the FLSA.

48. Both Plaintiffs were subject to the Direct Overtime Violation Practice.

- **The Arbitrary Deduction Practice**

49. Plaintiffs were also subject to a practice by Defendants under which Defendants unilaterally and arbitrarily deducted wages owed to Plaintiffs (the "Deduction Practice").

50. Under the Deduction Practice, Defendants—primarily through John—would reduce Plaintiffs compensation if John believed they had not "done enough" to earn their wages.

51. The Deduction Practice affected overtime wages owed to Plaintiffs and thus violated the FLSA's overtime provisions.

- **The Morning Skimming Practice**

52. During the relevant period, Defendants required Plaintiffs and other Painters to arrive at Defendants' shop at or around 6:45 AM.

53. From approximately 6:45 AM to 8 AM, Defendants would hand out supplies, assign work orders to individual Painters, and otherwise give instructions for the day.

54. At times, Defendants allowed individual Painters to obtain supplies, such as paint, directly from a Sherwin Williams store between 6:45 AM and 8 AM.

55. Defendants, however, would never pay Plaintiffs or any other Painters for the work being performed from 6:45 AM and 8 AM (the "Morning Skimming Practice").

56. This time—which is undoubtedly compensable under the FLSA—went completely unpaid. Because Plaintiffs, like all other similarly situated Painters, customarily and regularly worked over 40 hours a week, the Morning Skimming Practice affected overtime wages.

57. Because no compensation was paid as part of the Morning Skimming Practice, such time must be paid on a time-and-a-half basis to the extent overtime was worked on each specific pay period.

D. **Defendants' Illegal Payment Practices Affected All Other Similarly Situated Employees.**

58. Defendants' pattern and practice of depriving workers of overtime compensation required by the FLSA extended to all Painters at Eagle Painting.

59. All Painters were subject to the Direct Overtime Violation Practice.

60. All Painters were subject to the Arbitrary Deduction Practice.

61. All Painters were subject to the Morning Skimming Practice.

62. The foregoing practices affected the overtime wages of similarly-situated Painters.

63. Plaintiffs, on behalf of himself and all other similarly situated employees, have retained undersigned counsel and agreed to pay a reasonable attorneys' fee for all services rendered.

## COUNT I

### OVERTIME VIOLATION BY EAGLE PAINTING UNDER THE FAIR LABOR STANDARDS ACT

64. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 63 above as if fully set forth herein.

65. Upon information and belief, Eagle Painting's annual volume of sales or business exceeded $500,000 during each calendar year of the relevant period.

66. As part of its business, Eagle Painting purchased goods and materials that traveled through interstate commerce during the relevant period.

67. During the relevant period, Eagle Painting obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, and otherwise regularly engaged in interstate commerce.

68. During the relevant period, Eagle Painting, upon information and belief, accepted credit card payments, wire transfers, and other forms of payments that were made or processed outside the state of Florida.

69. During the relevant period, Eagle Painting was an employer engaged in interstate commerce and subject to the FLSA.

70. During their employment with Eagle Painting, Plaintiffs worked overtime hours.

71. Eagle Painting, however, never compensated Plaintiffs for any overtime hours worked.

72. Plaintiffs are owed overtime back pay.

73. In addition, Eagle Painting is liable for double the overtime amounts owed as liquidated damages under the FLSA as a result of its intentional and willful violation of the FLSA.

74. Other Painters of Eagle Painting were also deprived of overtime compensation at a rate of time-and-a-half their regularly rate of pay as required by the FLSA.

75. These similarly situated employees are also entitled to full relied under the FLSA.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Enter judgment for Plaintiffs against Eagle Painting under the FLSA;

b. Award Plaintiffs actual damages for the unpaid wages;

c. Award Plaintiffs liquidated damages;

d. Award Plaintiffs their attorneys' fees and costs;

e. Award Plaintiffs all recoverable interest; and

f. Award any other relief this Honorable Court deems just and proper.

## COUNT II

### OVERTIME VIOLATIONS AGAINST JOHN UNDER THE FAIR LABOR STANDARDS ACT AS TO MASCHIO AND ALL OTHERS SIMILARLY SITUATED

76. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 63 above as if fully set forth herein.

77. During some or all of the relevant period, John was an owner, corporate officer, and operator of Eagle Painting

78. During some or all of the relevant period, John operated the day-to-day activities of Eagle Painting, had supervisory authority over Plaintiffs and all other similarly situated employees, and was partially or totally responsible for paying Plaintiffs and all other similarly situated employees.

79. John was Plaintiffs' employer, joint employer, or co-employer for purposes of the FLSA as the term employer is defined by 29 U.S.C. § 203 during the relevant period.

80. Plaintiffs are owed unpaid overtime compensation pursuant to the FLSA.

81. Other similarly situated employees of Defendants were also deprived overtime compensation at a rate of time-and-a-half their regularly rate of pay as required by the FLSA.

82. John is also jointly and severally liable for double the overtime amounts owed as liquidated damages under the FLSA as a result of his intentional and willful violation of the FLSA.

**WHEREFORE,** Plaintiffs respectfully requests that the Court:

a. Enter judgment against John under the FLSA;

b. Award Plaintiffs actual damages for the unpaid wages;

c. Award Plaintiffs liquidated damages;

d. Award Plaintiffs attorneys' fees and costs;

e. Award Plaintiffs all recoverable interest; and

f. Award any other relief this Honorable Court deems just and proper.

## COUNT III

### OVERTIME VIOLATIONS AGAINST JANET UNDER THE FAIR LABOR STANDARDS ACT AS TO MASCHIO AND ALL OTHERS SIMILARLY SITUATED

83. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 63 above as if fully set forth herein.

84. During some or all of the relevant period, Janet was an owner, corporate officer, and operator of Eagle Painting

85. During some or all of the relevant period, Janet operated the day-to-day activities of Eagle Painting, had supervisory authority over Plaintiffs and all other similarly situated employees, and was partially or totally responsible for paying Plaintiffs and all other similarly situated employees.

86. Janet was involved in hiring.

87. Janet was particularly involved in the payroll practices.

88. Janet would handwrite overtime hours on a note and pay some of the overtime hours as straight time, via cash payments, rather than include them in payroll.

89. Janet was Plaintiffs' employer, joint employer, or co-employer for purposes of the FLSA as the term employer is defined by 29 U.S.C. § 203 during the relevant period.

90. Plaintiffs are owed unpaid overtime compensation pursuant to the FLSA.

91. Other similarly situated employees of Defendants were also deprived overtime compensation at a rate of time-and-a-half their regularly rate of pay as required by the FLSA.

92. Janet is also jointly and severally liable for double the overtime amounts owed as liquidated damages under the FLSA as a result of his intentional and willful violation of the FLSA.

**WHEREFORE,** Plaintiffs respectfully requests that the Court:

a. Enter judgment against Janet under the FLSA;

b. Award Plaintiffs actual damages for the unpaid wages;

c. Award Plaintiffs liquidated damages;

d. Award Plaintiffs attorneys' fees and costs;

e. Award Plaintiffs all recoverable interest; and

f. Award any other relief this Honorable Court deems just and proper.

## JURY TRIAL

Plaintiff hereby requests a trial by jury with respect to all claims so triable.

Respectfully submitted,

*/s/ J. Freddy Perera*
J. Freddy Perera, Esq.
Florida Bar No. 93625
freddy@pererabarnhart.com
Valerie Barnhart, Esq.
Florida Bar No. 88549
valerie@pererabarnhart.com
**PERERA BARNHART, P.A.**
12555 Orange Drive, Suite 268
Davie, Florida 33330
Phone: 786.485.5232
*Attorneys for Plaintiff*