UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-60728-BLOOM/Valle

JOSE GARCIA, LEDVIN ALARCON,
*and all others similarly situated under*
*219 U.S.C. § 216(b)*,

      Plaintiffs,

v.

J&J, INC., d/b/a EAGLE PAINTING,
JANET S. FIELD and JOHN H. FIELD,

      Defendants.
_____/

## ORDER ON MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION AND FOR EVIDENTIARY HEARING AND/OR ORAL ARGUMENT

**THIS CAUSE** is before the Court upon Defendant J&J Inc.'s ("Defendant" or "Eagle Painting") Motion to Stay Proceedings and Compel Arbitration as to Opt-In Plaintiffs, Walter J. Contreras and Jonathan "Quincy" Oliver, and accompanying request for hearing, ECF Nos. [88], and [89], (together, the "Motion"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I. BACKGROUND

Plaintiffs Garcia and Alarcon filed this action, on behalf of themselves and all others similarly situated, alleging that Defendants failed to provide overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Garcia and Alarcon were employed by Defendants as painters and allege that they were deprived of overtime compensation in accordance with the FLSA on more than one occasion. Garcia and Alarcon sought, and were

granted, conditional certification under the FLSA. ECF No. [32]. Contreras and Oliver (together, "Plaintiffs") are two individuals who have opted in as plaintiffs in this case. *See* ECF Nos. [46], [52]. In the Motion, Eagle Painting requests that the Court compel arbitration of Contreras' and Oliver's FLSA claims pursuant to the terms of an Independent Contractor Agreement ("Agreement") signed by each of them. *See* ECF Nos. [88-1], [88-2].

## II.    LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers*, 134 S. Ct. 773 (2014) (quoting *Mitsubishi Motors*, 473 U.S. at 625-26); *Hemispherx*, 553 F.3d at 1366 ("The role of the courts is to rigorously enforce agreements to arbitrate.") (internal citation and quotation omitted). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Case No. 19-cv-60728-BLOOM/Valle

Despite the courts' proclivity for enforcement, a party will not be required to arbitrate where the party has not agreed to do so. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of contract garnered from the applicable state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) (citation omitted); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

When presented with a motion to compel arbitration, a district court will consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders*, 686 F. Supp. 2d at 1322 (citation omitted); *see also Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues

as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

### III.   DISCUSSION

At the outset, the Court notes that the parties do not dispute that the Agreements relied upon by Defendant are between Plaintiffs' respective corporations—Contreras Painting & Remodeling, Inc. and Q's Elite Services, Inc.—and Defendant. In pertinent part, the Agreements state the following:

> Contractor and Company agree that final and binding arbitration will be the exclusive means of resolving any disputes between Contractor and Company. [. . .] Contractor and Company agree to bring any disputes in arbitration on an individual basis only and not as a class or other collective action basis.

ECF No. [88-1] at 4 ¶ 13; ECF No. [88-2] at 4 ¶ 13. The Agreements explicitly define the terms "Contractor" as Contreras' and Oliver's respective corporations, and "Company" as Defendant Eagle Painting. ECF No. [88-1] at 1; ECF Non. [88-2] at 2. Accordingly, the arbitration clause of the Agreements is expressly limited to disputes between Plaintiffs' corporations and Defendant, and the Court will not compel arbitration of Contreras' and Oliver's individual claims against Defendant. *See World Rentals & Sales, LLC*, 517 F.3d at 1245-46 (declining to compel arbitration between signatory and non-signatory where defined terms in agreement did not include non-signatory). Had the parties intended to bind the Plaintiffs individually, the Agreements could have

4

expressly stated as such. However, the Agreements do not and, therefore, Plaintiffs have not agreed to arbitrate their individual claims.[1]

Nevertheless, in the Motion, Defendant's principal argument that Contreras and Oliver individually must arbitrate their FLSA claims is that they should be bound by the arbitration provision contained in the Agreements with their corporations because they are agents or alter egos of their corporations. Defendant also argues that Contreras and Oliver should be equitably estopped from refusing to comply with the arbitration clause because they received a direct benefit from the Agreements. The Court considers each argument in turn.

The Eleventh Circuit has recognized that "common law principles of contract and agency law allow a signatory . . . to bind a non-signatory . . . to an arbitration agreement under any of five distinct theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *World Rentals & Sales, LLC*, 517 F.3d at 1244.

### A. Agent or alter ego

Defendant argues that the Court should find Plaintiffs are agents or alter egos of their corporations because the corporations are owned and operated by Plaintiffs, Plaintiffs were paid through their corporations, and Plaintiffs are the sole owners, officers and employees of their corporations. Upon review, none of Defendant's contentions have merit.

First, Defendant's argument that Plaintiffs were agents of their corporations turns the Court's inquiry on its head. According to the case law, "[a] non-signatory may be compelled to

---

[1] Defendant also takes the position that Plaintiffs are in fact signatories to the Agreements, and that the Agreements merely reference their respective corporations. The assertion is specious given the explicit definition of terms in the Agreements, and ignores the fact that a corporation is an artificial entity that cannot act except through an officer or other authorized individual. Moreover, if the Court were to determine that the individual Plaintiffs are signatories by virtue of having signed the Agreements on behalf of their corporations, the Court would be bound to apply the same reasoning to find that Defendant Janet Field is a signatory by virtue of having signed on behalf of Eagle Painting.

5

arbitrate under an agency theory if a signatory signed the arbitration agreement as the non-signatory's agent." *Id*. at 1247. Here, the non-signatories are Plaintiffs and the signatories are their corporations. Thus, to credit Defendant's argument, the Court would have to find that the corporations (signatories) were acting as Plaintiffs' (non-signatories) agents when the Agreements were signed. Such a finding would be illogical and does not support Defendant's position in any event.

Second, Defendant has not presented sufficient evidence to support piercing the corporate veil or to warrant a finding that Plaintiffs are alter-egos of their corporations.

It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to 'pierce the corporate veil'—the [party] must prove that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (citing *Gasparini v. Podormingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (emphasis removed). Here, the only evidence presented by Defendant to substantiate their argument is that Plaintiffs are the only officers of their corporations, and that Plaintiffs were paid through their corporations for services rendered to Defendant. To pierce the corporate veil or find that the Plaintiffs are alter egos of their corporations under these circumstances would essentially justify a finding that any closely-held or small corporation is a misuse of the corporate form. However, "[t]he mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the

conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders . . . . If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120 (Fla. 1984) (quoting *Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 23-24 (Fla. 1955)). Indeed, "the corporate veil may not be pierced absent a showing of improper conduct. *Dania Jai-Alai Palace, Inc*., 450 So. 2d at 1121. There is no such showing in this case. Accordingly, there is no basis to conclude that the Plaintiffs' corporations were alter egos of Plaintiffs or vice-versa such that Plaintiffs should be compelled to arbitrate their FLSA claims.

### B. Equitable estoppel

Defendant also argues that Plaintiffs should be compelled to arbitrate their claims under the theory of equitable estoppel because they received a direct benefit from the Agreements and that they "embraced" the Agreements. Upon review, the Court finds that this argument lacks merit.

"Estoppel also may bar a non-signatory from avoiding arbitration if the non-signatory relies on a contract containing an arbitration clause." *World Rentals & Sales, LLC*, 517 F.3d at 1248. Here, it cannot be said that Plaintiffs' FLSA claims rely in any way upon the Agreements. The Agreements do not contain provisions regarding the payment of wages, nor have Plaintiffs asserted claims for breach of the Agreements. Moreover, Defendant fails to support the assertion that Plaintiffs received a direct benefit from the Agreements, or to otherwise explain how they "embraced" the Agreements, which Defendant does not dispute that it drafted, and which heavily benefit Defendant.

Defendant also contends that Plaintiffs' claims against individual Defendants Jack and Janet Field (also non-signatories)—the owners of Defendant—are inextricably intertwined

because they are interdependent upon the alleged concerted misconduct by both non-signatories and a signatory to the Agreements, relying upon *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997), *abrogated on other grounds by Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1271 (11th Cir. 2002). However, Defendant's contention again requires the Court to turn the analysis upside down. Specifically, *Boyd* notes that "the application of equitable estoppel is warranted . . . when the *signatory* raises allegations of, not merely parallel or similar, but substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." 981 F. Supp. at 1433 (emphasis added). Here, however, a signatory is not raising allegations of misconduct. Rather, Plaintiffs are and the Court has already determined that the Plaintiffs are non-signatories to the Agreements. Moreover, *Boyd* addresses a situation in which a non-signatory attempted to compel arbitration against a signatory—the reverse of this case. As such, *Boyd* does not help Defendant.

Indeed, Defendant conflates the concepts of a non-signatory seeking to compel arbitration with a signatory, and a signatory seeking to compel arbitration with a non-signatory. These concepts are not interchangeable. "[G]iven the nature of arbitration, the distinction between whether a non-signatory seeks to compel a signatory into arbitration, and whether a signatory seeks to compel a non-signatory into arbitration is important." *Am. Personality Photos, LLC v. Mason*, 589 F. Supp. 2d 1325, 1335 (S.D. Fla. 2008); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 780 (2d Cir. 1995) (noting that "[a]nything short of requiring a *full* showing of some accepted theory under agency or contract law . . . dilutes the safeguards afforded to a non-signatory by the 'ordinary principles of contract and agency' . . . .") (emphasis in original). "Because arbitration is a matter of contract, 'if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so.'" *Am. Personality Photos, LLC*, 589 F. Supp. 2d at 1335

8

(citation omitted); *see also Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) ("Because it is well established that parties cannot be forced to submit to arbitration if they have not agreed to do so, a district court, rather than a panel of arbitrators, must decide whether a challenged agreement to arbitrate is enforceable against the parties in question.") (internal quotation and citation removed).

Because the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution, there is no need for an evidentiary hearing. Nor does the Court believe that it would benefit from oral argument on the issues raised. The Court finds that the individual Plaintiffs did not agree to arbitrate their claims with Defendant by virtue of the subject Agreements. As Defendant has failed to satisfy the first prong of its inquiry, the Court need not consider Plaintiffs' contentions that the Agreements prevent the effective vindication of their FLSA rights or that Defendant waived its right to arbitration.

IV.   **CONCLUSION**

Accordingly, the Motions, **ECF Nos. [88]** and **[89]**, are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 7, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record